UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| RICKY KURT WASSENAAR, | ) | CASE NO. 4:08 CV 1958 |
| | ) | |
| Plaintiff, | ) | JUDGE PETER C. ECONOMUS |
| | ) | |
| v. | ) | |
| | ) | MEMORANDUM OF OPINION |
| TERRY J. COLLINS, et al., | ) | AND ORDER |
| | ) | |
| Defendants. | ) | |

Pro se plaintiff Ricky Kurt Wassenaar filed action under 42 U.S.C. § 1983 against Ohio Department of Rehabilitation and Correction ("ODRC") Director Terry Collins, former ODRC Director Reginald Wilkinson, former Warden of the Ohio State Penitentiary ("OSP") Marc Houk, OSP Deputy Warden Vernon Brown, ODRC Attorney Steven Young, ODRC Assistant Chief Inspector Paul Shoemaker, former OSP Paralegal David T. Wojtas, OSP Legal Services Supervisor Linda Gabauer, OSP Cashier Supervisor Lori Beggs, OSP Institutional Inspector Mark Thomas, OSP Institutional Inspector Teddy Jackson, and Publication Screening Committee members John and/or Jane Does. In the complaint, plaintiff alleges that he was denied access to the courts, that the prison cashier is violating an Arizona court order, that he was placed in disciplinary segregation without due process, that he was denied obscene materials in violation of the First Amendment, and that he has been denied access to the courts because the prison does not consider him to be indigent.

He seeks monetary and injunctive relief.

## Background

Mr. Wassenaar is an Arizona prisoner who is currently being housed in OSP. On January 18, 2004, Mr. Wassenaar and another inmate attempted to escape from the Lewis Complex of the Arizona Department of Corrections. At the time, Mr. Wassenaar was serving a 28 year sentence. His escape attempt failed and resulted in a 15 day stand-off with prison authorities. Two corrections officers were held as hostages. One of the officers was sexually assaulted. The two prisoners surrendered on February 1, 2004.

Mr. Wassenaar was indicted on 27 counts in two indictments. Twenty of those charges were submitted to a jury. Mr. Wassenaar chose to represent himself at trial. He was acquitted of one charge of attempted second degree murder, but was found guilty on the remaining 19 counts. He was sentenced to 16 consecutive life sentences. He was transferred to the custody of OSP pursuant to the Interstate Corrections Compact to avoid retribution from Arizona prison authorities.

The civil complaint filed by Mr. Wassenaar contains five claims for relief. In his first claim, he asserts that he was denied access to the courts by OSP prison officials. He states that upon his arrival at OSP, he had active cases in the Arizona court system, including appeals in his criminal case, no. CR 2004-010115-001. Mr. Wassenaar filed a Petition for Post Conviction Relief prior to his entry into OSP. On November 6, 2006, the Superior Court of Arizona, Maricopa County, granted his Petition in part and denied it in part. He filed a Motion for Reconsideration in December 2006. It was denied by the court on February 17, 2007. He claims he had thirty days

in which to appeal the denial of his Petition for Post Conviction Relief.[1]

Mr. Wassenaar contends that he submitted a three page Motion for Extension of time to file a Petition for Review of the Post Conviction Relief to OSP prison personnel asking them to make five copies of his Motion. The total cost for the copies would have been $ 0.75. Mr. Wassenaar had only $ 0.49 left in his account. His Motion was returned to him the next day with a note that his copy request could not be processed due to insufficient funds. He contacted OSP paralegal David Wojtas regarding the situation. He claims he was told that Cashier Supervisor Lori Beggs would not approve of the expenditure if he did not have funds in his account to pay for the copies. Undeterred, he submitted the Motions for copying a second time, and again they were returned. Mr. Wassenaar did file a Motion for Appointment of Counsel with the court on March 22, 2007. It was apparently processed by the cashier's office without incident. He, however, did not file his Motion for Extension of Time to File a Petition for Review of the Post Conviction Relief until March 18, 2007. On May 17, 2007, the Superior Court of Arizona, Maricopa County, issued an Order stating, "The Court has read and considered the Defendant's Motion for Extension of Time to File Petition for Review of the PCR dated 4/18/07. IT IS ORDERED denying the same."[2] Nevertheless, Mr. Wassenaar filed his Review with the Arizona Court of Appeals. He states that his Review was denied as untimely. He contends that he was denied access to the courts by former OSP Warden Marc Houk, former Legal Services Supervisor Linda Gabauer, Cashier Supervisor

---

[1] It is apparent that Mr. Wassenaar begins counting this thirty day period on the date his Motion for Reconsideration was denied. There is no indication that this date, and not the date of the Maricopa County Court's decision denying in part his petition for post conviction relief, would govern the calculation.

[2] Maricopa County Superior Court Orders can be viewed at: http://www.courtminutes.maricopa.gov/

Lori Beggs, former Paralegal David Wojtas, former Institutional Inspector Teddy Jackson, and ODRC Assistant Chief Inspector Paul Shoemaker.

Mr. Wassenaar's second claim is related to an Order issued by the Maricopa County Court. Mr. Wassenaar was ordered to pay restitution in the amount of $ 626,383.36 to the victims of his crimes. The Court provided that, "payment shall be 30% of [Wassenaar's] earnings while incarcerated at the Arizona Department of Corrections." Thereafter, the Arizona Department of Corrections arranged for Mr. Wassenaar to serve his sentence at OSP in accordance with the Interstate Corrections Compact. Mr. Wassenaar contends that because he is no longer "incarcerated at the Arizona Department of Corrections," he is no longer required to pay restitution, and the deduction of these costs violates the Arizona court's order. He claims former ODRC Director Reginald Wilkinson, Current ODRC Director Terry Collins, Deputy Warden Vernon Brown, ODRC Attorney Steven Young, and OSP Cashier Lori Begg failed to comply with the Arizona court's Order.

For his third claim, Mr. Wassenaar claims he was denied due process prior to being placed in disciplinary segregation. He claims that on March 12, 2007 and again on March 5, 2008, he was moved from pod C4 to pod C1 pending a disciplinary hearing on conduct reports alleging rule infractions. He contends that pod C4 and pod C1 are identical. They each have the same kind of cells, are within feet of each other, have the same security status, and are operated by the same security personnel. The only difference between the pods is the amenities offered to the prisoners. In pod C4, inmates are permitted to possess commissary food items, stationary, certain hygiene items, a television, a radio, and select items of clothing such as sweat pants, gym shorts, hats and gloves. Inmates in pod C1 awaiting a hearing on disciplinary charges are denied these privileges.

Mr. Wassenaar contends that he is not concerned with placement into C1, but rather contests the fact that the move is made prior to the disciplinary hearing, which he states is not the proper procedure under the prisons's Inmate Handbook.  He also states that the handbook provides for a maximum penalty of 15 days in segregation.  He indicates that he received 15 days, in addition to the time he was in the unit awaiting the hearing, for a total of 23 and 24 days respectively.  He contends that Reginald Wilkinson, Terry Collins, OSP Warden Marc Houk, OSP Institutional Inspector Mark Thomas, and ODRC Assistant Chief Inspector Paul Shoemaker denied him due process.

Mr. Wassenaar's fourth claim asserts a violation of his First Amendment rights.  He alleges that on July 11, 2005, 18 pornographic magazines were confiscated from him because they depicted activities which were deemed to be obscene by prison officials.  Five publications were seized on September 19, 2006 because they were deemed to be obscene.[3]  He claims that an Arizona case, Broulette v. Starns, 161 F. Supp. 1021 (2001), provides him with the right to possess pornographic materials.  He states that under the Interstate Corrections Compact, he must be accorded the same rights as he would receive if he were incarcerated in the State of Arizona.  He asserts that Terry Collins, Marc Houk, Steven Young, Paul Shoemaker and John Doe violated his First Amendment rights.

In his fifth cause of action, Mr. Wassenaar challenges the ODRC policy that defines inmate indigence standards.  He claims that the policy limits indigence standard to inmates earning less than $ 9.00 per month and whose account did not exceed $ 9.00 at any time during the month.

---

[3] Mr. Wassenaar lists the publications as Porn Stars, Hot & Spicy, Lollypops, Young Lust, and OW.

Mr. Wassenaar earns $ 9.00 per month for his state pay. He indicates that he has filed so many legal actions, that the subsequent deductions for his court ordered filing fees often leaves him with little money left in his account. He has attempted to gain an indigent inmate legal kit to file additional cases, but has been denied these items. He indicates that his family often sends him stamped envelopes which he uses against prison policy to barter for pens and other commissary items. He feels that the policy denies him access to the courts. He asserts this claim against Terry Collins, Marc Houk, and Lori Beggs.

## Analysis

Although pro se pleadings are liberally construed, Boag v. MacDougall, 454 U.S. 364, 365 (1982) (per curiam); Haines v. Kerner, 404 U.S. 519, 520 (1972), the district court is required to dismiss an in forma pauperis action under 28 U.S.C. §1915(e) if it fails to state a claim upon which relief can be granted, or if it lacks an arguable basis in law or fact.[4] Neitzke v. Williams, 490 U.S. 319 (1989); Lawler v. Marshall, 898 F.2d 1196 (6th Cir. 1990); Sistrunk v. City of Strongsville, 99 F.3d 194, 197 (6th Cir. 1996). For the reasons stated below, this action is dismissed pursuant to §1915(e).

Mr. Wassenaar's first and fifth claims assert causes of action for denial of access to the courts. He first states that the prison cashier would not extend credit to him to make copies of his Motion, which he claims caused his Motion to be filed several months after he intended to file

---

[4] An in forma pauperis claim may be dismissed sua sponte, without prior notice to the plaintiff and without service of process on the defendant, if the court explicitly states that it is invoking section 1915(e) [formerly 28 U.S.C. § 1915(d)] and is dismissing the claim for one of the reasons set forth in the statute. McGore v. Wrigglesworth, 114 F.3d 601, 608-09 (6th Cir. 1997); Spruytte v. Walters, 753 F.2d 498, 500 (6th Cir. 1985), cert. denied, 474 U.S. 1054 (1986); Harris v. Johnson, 784 F.2d 222, 224 (6th Cir. 1986); Brooks v. Seiter, 779 F.2d 1177, 1179 (6th Cir. 1985).

it. He asserts this claim against the OSP Warden, Legal Services Supervisor, Cashier, Paralegal, former Institutional Inspector Teddy Jackson, and ODRC Assistant chief Inspector Paul Shoemaker. Of these defendants, only two of them are identified in Mr. Wassenaar's allegations. He indicates that Paralegal David Wojtas informed him of Ms. Begg's position on making copies without sufficient funds to cover the cost. The other defendants are not specifically mentioned in this cause of action.

A plaintiff cannot establish the liability of any defendant absent a clear showing that the defendant was personally involved in the activities which form the basis of the alleged unconstitutional behavior. Rizzo v. Goode, 423 U.S. 362, 371 (1976); Mullins v. Hainesworth, No. 95-3186, 1995 WL 559381 (6th Cir. Sept. 20, 1995). The complaint simply contains no facts which reasonably associate Warden Houk, Legal Services Supervisor Linda Gabauer, former Institutional Inspector Teddy Jackson, or Assistant Chief Inspector Paul Shoemaker to the denial of credit for copies.

It is plausible that Mr. Wassenaur included these defendants in the action due to their response to his grievances. Responding to a grievance or otherwise participating in the grievance procedure, however, is insufficient to trigger liability under 42 U.S.C. § 1983. Shehee v. Luttrell, 199 F.3d. 295, 300 (6th Cir. 1999).

Furthermore, Mr. Wassenaar fails to state a claim for denial of access to the courts. To state a claim, plaintiff must demonstrate he suffered actual injury as a result of the actions of the defendants. Lewis v. Casey, 518 U.S. 343, 351 (1996). The injury requirement is not satisfied by just any type of frustrated legal claim. Id. A prison official may be held liable for the deprivation of this First Amendment right only to the extent that his or her actions prevented a prisoner from

7

pursuing or caused the rejection of specific non-frivolous direct appeals, habeas corpus applications, or civil rights actions. Id.; Hadix v. Johnson, 182 F.3d 400, 405 (6th Cir. 1999). "Impairment of any other litigating capacity is simply one of the incidental, and perfectly constitutional, consequences of conviction and incarceration."[5] Id. at 355.

In support of the claim of actual injury, plaintiff states the Superior Court of Arizona, Maricopa County, granted his petition for Post Conviction Relief in part and denied it in part on November 6, 2006. He filed a Motion for Reconsideration in December 2006. It was denied by the court on February 17, 2007. He claims he had thirty days in which to appeal the denial of his petition for post conviction relief. Mr. Wassenaar then attempted to submit a three page Motion for Extension of time to file a Petition for Review of the Post Conviction Relief. He did not, however, have sufficient funds in his account to cover the cost of the five copies he requested. The prison would not extend credit to him. He filed his Motion on April 18, 2007. The Court denied the extension on May 17, 2007. Mr. Wassenaar filed his Petition for Review of Post Conviction Relief which he contends was denied by the Appeals Court as untimely.

Mr. Wassenaar fails to demonstrate that he suffered an injury caused by one of the defendants. As an initial matter, the Maricopa County Court denied, in part, his Petition for Post Conviction Relief on November 6, 2006. Although Mr. Wassenaar filed a Motion for Reconsideration in December 2006, this may not have tolled the deadline for filing his Petition for Review. Nevertheless, Mr. Wassenaar was able to file his Motion for Extension of Time to File

---

[5] The Supreme Court stressed that the First Amendment does not guarantee prisoners the ability to transform themselves into "litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement." Lewis, 518 U.S. at 355.

Petition for Review of Post Conviction Relief in April 2007. It was denied by the Maricopa County Court on May 17, 2007. Mr. Wassenaar indicates it was denied because it was not timely filed; however, the Court's order does not state this as a basis of its ruling. The order merely indicates that the Motion was read, considered, and the same was denied. While Mr. Wassenaar may speculate that the basis of dismissal was the late date on which his Motion was filed, there is nothing in the order which suggests that it was denied because it was filed several months after the Petition for Post Conviction Relief was denied, rather than because the court did not agree with the merits of his request. Furthermore, although his attempt to appeal the partial denial of post conviction relief was dismissed as untimely, he filed a second Petition for Post Conviction Relief in March 2008 which he was able to fully litigate. There is no indication that the actions of any of the defendants caused a non-frivolous direct appeal, habeas corpus application, or civil rights action to be dismissed.

Similarly, Mr. Wassenaar contends that the defendant's inmate indigence policy denied him access to the courts because he is unable to afford commissary items after his filing fees are deducted from his prison trust account. Again, he fails to allege that he has suffered an actual injury.

Mr. Wassenaar's second claim for relief is related to an Order issued by the Maricopa County Court ordering him to pay restitution to his victims while he is incarcerated in the Arizona Department of Corrections. He contends that because he is no longer "incarcerated at the Arizona Department of Corrections," he is no longer required to pay restitution, and the deduction of these costs violates the Arizona court's order. Mr. Wassenaar states that he litigated this issue in the Ohio Court of Claims and did not receive a favorable ruling. He appealed that

9

decision to the Ohio Tenth District Court of Appeals. See Wassenaar v. Ohio Dept. of Rehabilitation and Correction, Nos. 07AP-712, 07AP-772, 2008 WL 713932 (Ohio App. 10 Dist. Mar. 18, 2008). The decision of the Court of Claims was affirmed. Id. Mr. Wassenaar now files the same claim in this action.

A federal court must give a state court judgment the same preclusive effect it would have in the courts of the rendering state. 28 U.S.C. § 1738; Dubuc v. Green Oak Township, 312 F.3d 736, 744 (6th Cir. 2002). The preclusive effect of the previous state court judgments are therefore governed by Ohio law on preclusion. Id. Under Ohio law, an existing final judgment or decree is conclusive as to all claims which were or might have been litigated in the first lawsuit. National Amusement, Inc. v. Springdale, 53 Ohio St. 3d 60, 62 (1990). The doctrine of res judicata requires a plaintiff to present every ground for relief in the first action he files, or forever be barred from asserting it. Id. The purpose of this doctrine is to promote the finality of judgments and thereby increase certainty, discourage multiple litigation, and conserve judicial resources. Allen v. McCurry, 449 U.S. 90, 94 (1980). The Ohio courts have already determined that Mr. Wassenaar's assertion lacked merit. This court is bound to give full faith and credit to the decisions of the Ohio Court of Claims, and the Ohio court of Appeals.

Mr. Wassenaar also claims that he was denied due process when he was placed in disciplinary segregation prior to receiving a hearing on the charges against him. Mr. Wassenaar asserts the claim against the former ODRC Director, the current ODRC Director, the Institutional Inspector, and the ODRC Assistant Chief Inspector. Once again, there are no allegations in the complaint that reasonably suggest any of the named defendants directly participated in the decision to place Mr. Wassenaar into the C1 pod prior to his disciplinary hearings. Absent these allegations,

Mr. Wassenaar cannot prevail on a claim against them.

Moreover, Mr. Wassenaar does not state a claim for the denial of due process. As the first step in any due process inquiry, Mr. Wassenaar must show he has a protected liberty interest in avoiding placement in the C1 pod. The Fourteenth Amendment guarantees due process only for those protected interests. A prisoner generally does not have a liberty interest in remaining free from disciplinary segregation. Sandin v. Conner, 515 U.S. 472, 485 (1995). Discipline by prison officials in response to a wide range of misconduct falls within the expected parameters of a court-imposed sentence. Sandin, 515 U.S. at 483. Although States may, under certain circumstances, create liberty interests protected by the Due Process Clause, the interests are generally limited to freedom from restraint which, while not exceeding the sentence in such a unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life. Id. By Mr. Wassenaar's admission, the cell design and security arrangements are substantially identical. Inmates in segregation are denied the ability to exercise certain privileges. There are no facts presented in the complaint that would reasonably suggest that the 23 or 24 days plaintiff spent in disciplinary confinement presented the type of atypical and significant hardship which would give rise to a liberty interest protected by the Due Process Clause. Id. at 485.

For his fourth claim, Mr. Wassenaar asserts that prison officials violated his First Amendment rights by confiscating materials the officials deemed to be obscene. He contends that a hearing was held by the "PSC" who determined that the material should be banned due to its explicit content. He asserts this cause of action against Warden Houk, ODRC Director Terry

11

Collins, ODRC Attorney Steven Young, Assistant Chief Inspector Paul Shoemaker, and John Doe PSC Committee Members.

There are no allegations in the complaint reasonably suggesting that the Warden, the ODRC Director, the ODRC Attorney, or the Assistant Chief Inspector were personally involved in this decision.  The Warden and Assistant Chief Inspector are not mentioned at all in this cause of action.  A defendant cannot be held liable unless the plaintiff includes allegations which show that the defendant was personally involved in the activities which form the basis of the claim. Rizzo, 423 U.S. at 371.  Moreover, Mr. Wassenaar states only that he wrote a letter to Mr. Collins and Mr. Young but did not receive a response.  Failing to respond to a letter is not sufficient to state a claim for relief under § 1983.  Shehee, 199 F.3d. at 300.

Mr. Wassenaar contends that Broulette v. Starns, 161 F. Supp. 1021 (D. Ariz. 2001) provides him with the right to possess the sexually explicit materials.  As an initial matter, the Broulette case does not stand for the principle for which Mr. Wassenaar cites it.  In Broulette, the court determined that a prisoner could possess a Hustler magazine because the material sought to be banned simply depicted nudity.  Citing the Hook Consent Decree, which guaranteed inmates in the Arizona Department of Corrections the ability to receive publications unless those publications:

> contained instructions on the manufacturing of homemade weapons, bombs, explosives, escape materials, brewing of alcoholic beverages, or it they otherwise contain material which constitutes a direct and immediate threat to security, safety, or order of the institution, or *if they contained any material which is deemed obscene under applicable constitutional standards.*

Broulette, 161 F. Supp. at 1023. (emphasis added), the court determined that the mere nudity depicted in Hustler magazine was not obscene and therefore was permissible.  The material which

Mr. Wassenaar sought to possess, however, was not banned for depicting nudity. He alleges he was denied the material because it contained sexually explicit images which were deemed obscene and a threat to the security of the institution. The Broulette decision does not give inmates the right to possess obscene materials. In evaluating the constitutionality of the conduct of prison officials, the courts must accord prison administrators "wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." Bell v. Wolfish, 441 U.S. 520, 547 (1979); see Joplin v. Baylor, No. 92-2182, 1993 WL 288299 (6th Cir. July 28, 1993). There is nothing in the complaint to indicate that the prison officials denied Mr. Wassenaar a right guaranteed to him by the Constitution.

## Conclusion

Accordingly, this action is dismissed pursuant to 28 U.S.C. §1915(e). The court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.

IT IS SO ORDERED.

S/Peter C. Economus - 11/21/08
PETER C. ECONOMUS
UNITED STATES DISTRICT JUDGE